May 2, 2011

IN THE UNITED STATES DISTRICT COURT
FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

Jodi Darlene Dodson,
        Petitioner,


v.                    C.A. 1:11-0411


Federal Bureau of Prisons,
        Respondent,

FILED

JUN 10 2011

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

MOTIONS MADE PURSUANT TO:

1.    Motion requesting the Federal District Court to:

   A.   Compell the Federal Bureau of Prisons to respond by
        approval or denial for compassionate release based on
        serious medical issues,

   B.   Compell the Federal Bureau of Prisons to respond by
        approval or denial for administration of medication,
        previously administered, yet halted,

   C.   Compell the Federal Bureau of Prisons to expedite these
        responses, within thirty days of court order, due to
        seriousness of the issues and the extensive time delays
        that have been already used,

   D.   Request that the court permit the inmate to furlough, if
        needed, to court hearings, as inmate is not a flight risk
        is camp status, community custody, ties to the community,
        and is within eighteen months of release,and so that
        the inmate  can continue pro se,

   E.   Request that the court consider appointment of civil
        attorney for legal matters, due to incarceration,
        as  attorney in the Northern District is for criminal
        issues and does not want to address these issues,

   F.   Consider possibility of Summary Judgement,

   G.   Request that courts leave the case without prejudice,
        due to future legal issues pending with the BOP and
        the criminal case previously, being addressed by
        the plaintiff and the husband

   cG.  Request that the courts, compell the "Director" of the
        BOP, to make the final decision, as it is his, per the
        policy and procudures of the BOP.

May 2, 2011

Motion to compel the Federal Bureau of Prisons to respond by approval or denial; or the courts to issue a summary judgement, based on the following:

1. exhaustion of administrative remedies requirement has been satisfied

2. fact issue exists as to staffs deliberat indifference to prisoners serious medical needs

3. fact issue exists that the Bureau of Prisons health services staff and other staff memebers were deliberately indifferent to the prisoners medical needs

4. fact issue is that "no treatment" shows ineffectiveness and did in fact create deliberat indifference to the prisoners medical needs

5. non-medical admiiistrative employees were deliberately indifferent to the prisoners needs

6. possibility of appointed counsel by the courts is requested, as current attorney refuses to assist with health issues, BOP issues, and civil legalities relating to incarceration.

7. fact issue is that each level of the BOP, institutional, regional and district, shows a vilation of their own "program statements", as the compassionate release  and administrative remedy procedures were rejected repeatedly for "too many attjachments and untimeliness", yet, the medication remedies were permitted.

8. fact issue is that the "untimeliness" issue was raised by the BOP staff repeatedly, yet they exceeded their own deadlines for responses.

9. fact issue is that the BOP's double standard violates their own policies

10. fact issue is that the BOP policy for filing compassioante release states that exhibits and attachments are demanded, yet they refuse to accept the evidence in the inmates favor for fairness

11. The fact issue is that the BOP policy is that the "institution" must investigate issues, gather information, contact numerous staff and outside people, in order to make an informed decision which would enable the warden to grant compassionate release, yet this was not done, as the decisions were based on "no investigation" of facts, or evidence, inside or outside of the BOP, merely the staffs interpretation of the  issue., not outside attending physician or specialists.

12. fact issue is that no effort was made nor has been made to seek alternate means of any treatment, nor to assist the inmate with perfectly  permissable alternate incarceration, even as the inmate has been eligible for the Second Chance act, community custody,  home detention, home confinement, halfway house placement, or any other available options for treatment to begin, as of December 2010, (18 months from release for goodtime)

## MOTION

### MOTION TO COMPELL AN ANSWER OF APPROVAL/DENIAL/OR OTHERWISE

Motion requesting the Federal District Court, Southern District
of West Virginia, to compell the Federal Bureau of prisons,
specifically, the Director of the Bureau of Prisons, to reply
to a request for compassionate release based on medical conditions
that have not been addressed nor treated.

This issue has been addressed to staff members at Alderson
Federal Prison Camp, Alderson West Virginia, with no results.
This issue ha sbeen addressed to Federal Bureau of Prisons
other levels, regional and disctrict, by administrative remedy
prodecures, with no results.

The Federal Bureau of Priosns has determined that each time a
remedy was filed, that they would respond with a "rejection"
which is not appropriate, nor the intended outcome, of any
inmate who submits a remedy.  That process is to solve problems
not add to them.

This is further proven by the simple fact that no one can be
incarcerated and denied medical treatment.  It is unconstitutional.
Therefore, if the bureau of prisons cannot treat and inmate, then,
alternate incarceration or "substitute punishment", may be
authorized by the director or the courts.  (this may come in th
form of home detention, home confinement, probation, time serveed
by sentence reduction, etc.

MOTION

## Motion FOR JUDGEMENT BY COURTS FOR REF ENTRY/ EARLY RELEASE

Motion requesting  consideration and/or a summary judgement for release,
other than compassionate release, yet to still obtain medical treatment and
to seek physicians care and other specialists.  Also, to enable the inmate
to re-establish  Social Security/Medicare, Medicaid for medical treatment
to begin as soon as possible.  The inmate, will, also, seek to obtain a
current West Virginia Drivers License, as the license has expired while
incarcerated and West Virginia requires new written and driving exam to
issue new license.


This request is made to enable the inamte to begin re-entry into society,
per the Second Chance Act, BOP Policy, Community Confinement, etc.,
Consistent with 18 USC 3621.  This is determined by individual basis,
"long enough" to provide the greatest likelihood of "successful re-
integration in the community and many other factors, for which this
inmate qualifies.
This re-entry into society has been possible, as the rules state that
the inmate is eligble for a variety of alternate remedies, namely
18 months  prior to the projected release date of goodtime, which is
June 14, 2012.
Attached to the packet is documentation and evidence of the rules which
state that this inmate is eligble for a variety of remedies yet, the
BOP has refused to address them or even consider them.
Relief Sought is the release of the inmate for medical reasons, by simply
compassionate release, alternate sentence for release, or simply the
enactment of the Second Chance Act and/or other available options  that
have not been utilized by the staff of the BOP.  Please grant this request.

## MOTION

MOTION  TO FURLOUGH

Motion requesting the courts to issue an order that will enable the inmate to "furlough" to all and any future court appearances, pertaining to federal courts, as this inmate is and has been eligible to do so.

1. BOP Policy states that an inmate is authorized to furlough without an escort for day or overnite, particularly as in this case, with less than eighteen months to serve.

2. A judge can order a furlouggh.

3. This order will enable the inmate to travel, with all needed, documentations, evidence, and exhibits, if need be for court hearings.  Also, this will enable the inmate to prepare mentally and physically , as needed due to illness. The need for witness preperations will be needed, as well.

4. This inmate meets all furlough criteria per the BOP policy, particularly, as of June 14, 2011, the inmate will be within one year of goodtime release.

5. Inmate has means of travel per family, mother, brother, sister, and the mother-in-law and father-in-law, XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

¢. See BOP policy 570, for vreview of furlough rules, in Exhibit #28.

Bureau of Prisons Institutional Supplement          5360.09 Religios Practices
Bureau of Prisons Institutional Supplement          6031.01 Patient Care
18 USCS 3582
42 USCS 1983
42 USCS 12131
29 USCS 794 (a)
42 USCS 12101
18 USCS 1345
18 USCS 3143
USSG 5D1.3, 5F1.2
USCA 8th
USCA 14th

Civil Rights Act
Social Security Disability
Americans with Disabilities Act of 1990
Rehabilitaiton Act 1973
Amendments Act of 2008
ACLU National Prison Project/Litigation Prison and Jail Conditions

| | |
|---|---|
| U.S. v Moncrief | 289 FSupp 2d 1311 |
| Helling v McKinney | 509 US 25, 31-32 (1993) |
| Wilson v Seiter | 501 US 294, 304-05 (1991) |
| Hudson v McMillan | 503 US 1, 6-7 (1992) |
| Clement v Gomez | 298 F3d 898, 904 (2002) |
| Madrid v Gomez | 889 FSupp 1146, 1248-50 |
| Farmer v Brennen | 511 US 825, 837 (1998) |
| Hoptowit v Ray | 682 F2d 1237, 1252-55 (1982) |
| Estelle v Gamble | 429 US 97, 50 LEd 2d 251 |
| Greeno v Daley | 414 F3d 645 |
| Brock v Wright | 315 F3d 158, 162 |
| Tillary v Owens | 719 FSupp 1256, 1286 |
| | 907 Fwd 418 (1990) |

Plant Spirit Healing,  Pam Montgomery
Miracle Cures, Jean Carper

Instutional Supplement, Patient Care, 6031.01, states
that upon arrival, comparison of medications will be made by
the organization, including herbal, over the counter, etc.,
however, it then states that the following are not medically
necessary and will be discontinued. That is, herbal supplements,
(which are not provided by the BOP policy), over the counter
items, (as they may be purchased at the commissary, if
available), prescription items, (except those not in the BOP
formulary guidelines).

According to the above policy, there is no herbal supplements
to be administered an this has been confirmed by this institution,
even the request that a physician mail them in and have them
administered by this BOP health unit. That is not possible.

According to BOP policy 5360.09, inmates are permitted to
receive small amounts of wine, tobacco, herbs, the use of
a "sweat lodge,and "special diets, according to religion.

As the BOP permits these purposes, it appears that a discrimination
factor has presented itself, since they are not being permitted
for medical purposes.

My husband and I believe in homeopathic, naturalistic practices
as well as, conventional and over the counter medications for
treatment of illnesses, yet we are being denied the right to
practice our belief. Due to this discrimination, our health
has deterirated and our life span has been decreased.

This is an 8th amendment violation, made possible by the 14th
amendment, which prohibits the infliction of cruel and unusual
punishment on convicted prisoners.  This is demonstrated
by a deprevation of basic human needs, such as food shelter, clothing
exercise, MEDICAL CARE, or reasonable safety.
(Helling v McKinney , 509 U.S. 25, 31-32 (1993)

It is not enough to allege that the "totality of conditions" is
unconstitutional, plaintiff must allege deprivation of one or more
identifiable human needs.
Wilson v Seiter, 501 U.S. 294, 304-05 (1991)

The eight amendment is vilated here, as prison staff have used
force "maliciously and sadistically" to cause harm, and
supervisory staff are liable upon the showing of deliberate
indifference .
Hudson v McMillian 503 U.S. 1, 6-7 1992
Madrid v Gomez
(This is in relation to medical violation of use of force to
refuse any type of medical care for illness.)

A serious medical need is present whenever the falure to treat
a prisoners condition could result in further significant injury
or the unnecessary and wanton infliction of pain.
Clement v. Gomez, 298 F3d 898, 904 (9th Cir. 2002)

2

When our internal environment is conflicted that is by the external environment, we engage in an internal war that destroys life. Plants provide us with breath, all of our food, either directly or indirectly, therefore making humans completely dependant for our very existence. Plants are the most accessible avenue to healing available to us. When employed spiritually, emotionally and physically, the healing can begin and the healing can complete.

Herbal remedies such as the following have become a part of everyday life for many, in this day and age. It is essential that the BOP begin to recognize this as beneficial to their own prisoners.

Coenzyme Q10 is an antioxidant, a vitamin that your body must taki in to feed cells so that the body can operate at optimum level. IT is present in small amounts of food, noteably seafood and is produced by all cells of the body. Taking it revitalizes the heart function and relieves heart disease symptoms Symptoms of need include weakness, fatique and swelling. Treats CHF, cardiovascular problems, high blood pressure, arryhtmia, angina and mitral valve prolapse. Also, for degenerative neurological disease such as PArkinsons, Huntingtons, ALS, and MS. (the hope is to slow down progression, and is being studied to treat cancer, notably breast cancer with dramatic success.

St. Johns Wart Used for Mild to moderate depression. It is the drug gof choice in Germany. It outells "Prozac" 7-1, with 3 million prescriptions by year. Based on government approval and stringent clinical studies without unpleasant side effects. Intense sadness, worthlessness, overwhelming fatigue, loss of enery, little pleasure at work or life. Add this t oartificial light therapy and counseling, 60 - 80% improvement.

Ginkgo is beneficial for blood circulation, brain function;works in both neurodegenerative and vascular diseases. Treatment is for diminished memory and concentration, increased absent-mindedness, confusion, energy loss, tiredness, depression, dizziness, tinnitus, dimentia and Altzheimers. Also, atherosclerosis, varicose veins, intermit-tent claudication and impotence. It revitalizes brain activity, stopping or reversing a constellation of symptoms due to poor blood flow. This is a very strong antioxidant, which protects cells from damage, an underlying cause of all bodily degentegration, including dysfunctional brain cells, clogged blood vessels in the brain, heart and extremeties. Does discourage blood platelets stickiness, reduces fromation of blood clots, and plaque buildup, anti-inflammatory; protecting diseases arteries from further damage. Increases metabolism.

Grapefruit Fiber  Is for cholesterol and to unclog arteries.  It hinders absorp-
tion of fat and suppresses the liver production of cholesterol, dissolves
plaques and opens up arteries.

Fever Few  (Aspirin)  Is used as treatment for migraines, headaches, fever,
rheumatic inflammations, asthma, allergies, dermatitus, and psoriasis.
Is an anti-inflammatory

Glucosamine  used for osteoarthritis, rheumatoid arthritis, disc conditions,
and improves immune function, tendonitis, bursitis.  Stimulates
rebuilding of damaged cartilage and prevents breakdown of cartilage.
Is an anti-inflammatory agent, relieves pain, swelling  and tenderness.
Chondroitin draws fluid into the cartilage, attracting nutrients and helps
hydrage the cartilage.  Protects from premature degeneration and acts as
building block for creation of new cartilage.

(Ibuprofin, acetaminophen cause ulcers, gastrointestinal bleeding,
kidney damage and destroys cartilage while discouraging production of
new cartilage.)

Echinacea  is an infection fighter and alternate to antibiotics.  It is used
against colds, flus, viruses, and infections.  It activates the immune
system as a way of defeating infections as well as other diseases such as
cancer.  Fights infections by boosting immune functioning.  Is effective
in preventing and treating upper respiratory tract infections such as
colds and common ear infections.  (There is a warning if you have an
autoimmune disease such as lupus, tuberculosis, MS, diabetis, AIDS.)

Valerian  is an alternate to valium used for sleeping, anxiety, and muscle
relaxer.  There is no addiction.  It is used to calm down, and tame the
brain, reduce anxiety and induce sleep, relieve stress, and relax the
muscles.  does increase deep sleep, shortens fall asleep time,
prolongs sleep time, increases dreaming, reduces night time awakenings and
improves quality of sleep.

Milk Thistle  If toxins are more than the liver can handle, liver cells are
destroyed, liver function declines and can shut down.  Environmental
chemicals, air pollutants, pesticides, auto exhaust, prescription and
now-prescription drugs and alcohol, aids in the liver overload.
This pill restores normal liver function and curtails disease, helps
recovery and heals hepatitus.  IT is a complex antioxidant which prevents
damage t o healthy    liver cells, barring toxins from breaking thru
fatty cell membranes and entering cell interiors, and also, neutralizes
toxic substances.

Bee Pollen  for Hay fever, allergies, asthma, sinus, and lung disease.  Also,
anticoagulent and anti-inflammatory.  May chew the honecomb, as well

Ginger  Use as an antinausea, antimotion sickness and indigestion relief,
after surgery, morning sickness and vomiting.

<u>Kava</u>  is a mild tranqalizer, mild sedative, for stress, anxiety, tension, sleep, muscle relaxer,  tension headaches, and mood elevator.  Creates euphoria, relazation and restful sleep.  Does not rob alertness. (compare to alcohol, painkillers, prescription anti-anxiety drugs, tranquilizers, such as Xanax, Valium and Haleion, the sleeping pill.)

Omega 3's (Fish Oil)  The universal Miracle Care, for joints, arthritis, colitis, inflammator y bowel diseas, asthma, psoriasis, artery disease, inflammatory diseases, theraputic for brain disorders.  It is essential to cells; controls all behavior.  Also, depression, agression, brain damage, ADD, ADHD, Altzheimers, concentration and sleep disorderrs.

<u>Saw Palmetto</u>  used for the prostrate, urination, pain, and erectal disfunction. (Replaces surgery and pills).

<u>Celery and Cherry Extracts</u>  Used for Gout, forms of arthritis, big toe, knee, ankle, wrist, foot and hand.  Inflammation, swelling and redness, which can lead to kidney disease.   Acts as an anti-inflammatory which helps remove uric acid from the body.  Compare to the NSAIDS and painkillers.

<u>Licorice</u>  is a natural steroid, used to treat chronic fatigue and cluster of symptoms; flulike illness, headaches, joint aches, muscle pain, depression, unrelenting intense fatigue, keeping those from work and in bed all day. Also, brain fog, low blood pressure, and adrenal insufficiency, gastric ulcers, fights viruses and boosts immune function.  (Chronic Fatigue syndrome, fibromyalgia, yet you must have enlarged lymph glands. Compare to painkillers, antidepressants.  (Test this by using hte "tilt table test", you will pass out upon upright position if you are adrenal insufficient.)

<u>Grape Seed</u> OPC (Pycnogenel)  is the bood vessel fixer.  Used if blood vessels grow old, diseased, fragile, thing and leaky, health is compromised, heart muscle can be damaged, brain cells may die or malfunction; muscle cramps and vision may diminish.  Treats vascular disease, as it increases structural strength of weakened blood vessels.  Also, an antioxidant; fights cholesterol, arthritis, blood clots, ADHD. (Edema, Varicose veins, nose bleeds, gum bleeds, macular degeneration, high  blood pressure, allergies, spyder veins, bruising.

<u>Peppermment Oil</u>  used as a pain medication for tension headaches, irritable bowel syndrome, applied to the forehead, temple, eyebrow, hairline, neck, etc., or as an enteric capsule.  Compare to aspirin or tylenol.

Vitamin C and Vitamin E  also known as "heart drugs" are used for clogged arteries, high cholesterol, high blood pressure, heart attack, blood clots, stroke, and chest pain.  It opens diseased and clogged arteries so that that dilate normally and blood flows to freed heart cells.  Helps to slow down, stop and reverse artherosclerosis (hardening arteries), by ascting as an anti-inflammatory agent.. As an antioxidant, it also keeps ateries open, corrects abnormalities in vascular functioning of diseases arteries that lead to heart attacks and angina.  Used to treat cancer, asthma, infertility, diabetes, arthritis, degenerative eye disease, degenerative brain disease, such as Parkinssons Altzheimers, and L yme Disease.  Is a great antibacterial, as well.

May 2, 2011

In Miracle Cures, by Jean Carper, discusses herbs, vitamins and other remedies that do work according to patients, doctors, and scientific researchers.  They are safe if chosen and used appropriately.  They are often as safe and effective or more safe and effective than conventional mainstream medical drugs or treatments.  They are usually far less expensive and have accomplished "miracle cures" for many people.

For Bones, use Vitamin C and D, as an antiinflammatory.  (Ibuprofen negatively effects bone health.  Used a variety of ways, for a variety of illnesses and in combination for ultimate effects.  Antibacterial agent.

Migraines may be a magnesium deficiency, hormonal, chronic inflammation.  Use magnesium citrate to balance hormones while curbing inflammation.

Cold care try Uncka as it shortens duration naturally.

Blood Sugar can be treated with alpha lipoic Acid which  improves blood sugar levels in type II and may help with side effects such as nerve pain, kidney damage and slow wound healing
   Also, Gymnema , Chromium, Magnesium and Vitamin D, Bitter Melon
   Ginger, and Ginger Tea, Eldenberry, Garlic,Licorice, Vitamin C, etc.
Anoher cold care remedy is Echinachea, which stimulates the bodies immune system thru an "impersonation mechanism".

Brain Health  can use Gelsimium for anxiety, Mux Vomica for burnout, Ignatia for loss or grief, and Sepice for menopausal and peri-menopausal

Also for body aches, illnesses, use baths, with peroxide, epsoms salts, rose, lavender, and other extracts of plants, sea salts, sugar, teas
Used as an antioxidant, antiinflammatory, exfoliant, to draw out toxins.

Iodines can be used for thyroid conditions, metabolism, diabetes, and toxin releaser.  (Tincture on the body, not within.

Aloe Vera Juice, Gel, can be used withing and outside the body.  As a juice to heal internally, heartburn, acid reflux, sore throats, mouth sores, intestinal disorders, hemoroids.  Externally, as a healing agent for sunburns, skin disorders,  allergies, swelling bites.

For infections, colloidal Silver, is a natural antibiotic to be used internally or externally, yet sparingly as the body will become silver permanently.

According to Plant Spirit Healing, by Pam Montgomery , has found that plant people, vegatalistas, herbalists and people from all over the  world, from tribes and traditions, have gathered together because once upon a time, a plant saved their lives.  Once this happens, nothing is ever the same again.

For the past two decades, herbalists have been trying to prove that their field is "real" science, that it shold be taken seriously.  It is the invisible healing that takes place that seems to baffle those that question its strength.  It is this invisibleness that people seem to have difficulty with, as if it is some shameful thing that must be put away.

Plant medicinees are used throughout ecosystems by insects, birds, reptiels, mammals and other plants, yet overlooked by those in modern medicine, at least those who choose to be ignorant to the healing. Also, plants cant and will determine just what particular chemical an ill member of an ecosystem needs and will then begin making it for them, which is an invisible work of nature.  Modern medicine has tried to reduce healing to a sophisticated manipulation.   It is not necessary to have a degree in chemistry to understand the medicine of plants.  Herbal methods go beyond symptomatic treatment to source-level treatment.  This includes tinctures, teas, essential oils, or any useful part of the plant may be used for healing.

My husband and I found the above to be so very true, as to have saved our lives.  The simple act of no permitting us to use these methods to sustain our lives is against the very liberty this country was built on.  This issue is a violation of our rights as we must be permitted to either be released to treat our illness or Bureau of Prisons must change their policies.

7

This is demonstrated by the facts of this case, that are; no medical care, no medical policy per the BOP, no treatment or treatment plan per the BOP, and absolutely no suggestion as to any alternatives available.  This has caused significant and needless harm and will continue to do so until a course of action has been taken for treatment or alternate incarceration elsewhere, which means that with no BOP policy available ther is no treatment available, anywhere in the country if incarcerated.  That is the focus of this policy. Without a policy in place, incarceration is not an appropriate means of punishment for this serious illness.  IT must be addressed and treatment must be administered, appropriate for this disease, immediately.

This  is, also, being forced up the prisoner maliciously and saditically, as the staff has been and continues to show deliberate indifference to the issues and the inmates well being.  (Madrid v Gomez, 889 FSupp 1146, 1248-50).

This is demonstrated by actual evidence as well as, circumstantial evidence. The inmate and her physician has made the issues clear from the beginning. Documentations were sent in upon incarceration and after, specifically pertaining to hte request of compassionate release, which staff refused to consider for any type of treatment, refused to seek any treatments at all, and refused to consider alternate incarceration , nor the permittance of the physician to discuss, or even make arrangements for outside physicians and medications to be permitted.  This basically, covers any means of any treatment of any kind.

Failure to act i nthe face of these known violations is relevant circumstantial evidence that shows knowledge and state of mind.  Therefore, this shows that conditions are unconstitutional.  (This satisfies the subjective prong, because the same information that would lead the courts conclusion, was available to the prison officials.  This, also, shows the "deliberate indifference" as prison officials "have not responded" even reasonably, to the risk and the harm that has not been averted.  (Farmer v Brennen, 511 U.S. 825, 837, (1998)
A serious medical need is present whenever the failure to treat a prisoner condition could result in further significant injury or the unnecessary and wanton

infliction of pain.  (Clement v Gomez 298 F3d 898, 904 (2002)

The 8th Amendment requires that prison officials provide a system of ready access to adequate medical care.  Prison officials show deliberate indifference to serious medical needs if prisoners are unable to make their medical problems known to medical staff.  Access to the medical staff has no meaning if the medical staff is not competent to deal with the prisoners problems. (Hoptowit v Ray, 682 F2d 1237, 1252-53, (9th 1982).

In this case, the difference of medical judgements are actionable, as all medical care, treatment, and lack of administrative remedy has been ignored or simply not followed per the BOP.  Also, the access to qualified staff to address the problems with this illness have been prevented.  The simple fact that this illness is extremely complex, and warrants the acts of specialists and specific treatments per symptom, renders the lack of services by an unqualified person is deliberate indifference.  The failure to inquire into facts necessary to make a professional judgement by any staff member, namely by refusal to speak with anyone outside of the facility, for instance the attending physician or a specialist.  The interference with medical judgment by non-medical factors.  This was based upon the denial of treatment due to no BOP policy on this illness and that I could wait til my release to seek more treatment, such as my own homeopathic methods, budgetary restrictions for the Depo Provera shot, refusal to provide specialty consultations refusal to acknowledge or respond with an approval or denial on the compassionat release request and the lack of reaponse per the administrative remedy on the BP11, for the Depo Provera shot.  Judgement so egregiously bad that it really isn't medical.  Treatment so inappropriate as to evidence intentional mis-treatment likely to seriously aggravate the condition, doggedly persisting that no treatment is necessary nor will be forthcoming, ever.  The lack of medical treatment that is so grossly incompetent, inadequate  that it shocks the conscience, which constitutes the deliberat eindifference.  The facts that the staff has treated the prisoner "not as a patient, but as a nuisance, with no right to treatment of her illness.

9

May 2, 2011                                          Page

According to 42 USCS 1983, Right to state claim and pursuant to Estelle v Gamble, 429 US 97, 50 LEd 2d 251, Cruel and Unusual punishment clause of the 8th Amendment is made applicable by the 14th amendment. This amendment is more than physical, it embodies broad concepts of deprevation, civilized standards of humanity and decencey.

Punishments which are incompatable with the evolving standards of decency, that make the progress of a maturing society, or which elolve the unneccessary and wanton infliction of pain are repugnant to the cruel and unusual punishment clause of the 8th Amendment.

This proscribed punishment for alleged crimes is grossly disproportionate and imposes substantive limits on what can be made criminal and punished.

The government is obligated to provied medical care for those whom it is punishing by incarceration.

The public is required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.

Deliberate indifference to serious medical needs of prisoners constitutes unneccessary and wanton infliction of pain by the 8th Amendment. This is regardless of whether indifference is manifested by prison doctors in their response to the prisoners needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interferring with the treatment once pres cribed , regardless how evidenced, deliberate indifference to a prisoners serious illness or injury states a civil rights cause of action under the 42 USCS 1983.

(A cognizable claim of constitutional violation must allege acts or omissions sufficeintly  harmful to evidence deliberat eindifference to serious medical needs; it being only such indifference  that can afford evolving standards of decency in violation of the 8th Amendment.)

This is demonstrated by the evidence throughout the compassionate release request, the Depo Provera medication denial, and the lack of response to any request made by the inmate, myself. Their own records show this, as well.

10

May 2, 2011

Estelle v Gamble, 429 &S 97, 50 LEd 2d 260,  and the 8th Amendment, violations
are intent to deny or delay access to medical care or intent to interfer
with the treatment once prescribed.  If a "state" elects to impose
imprisonment as a punishment for a crime, it has an obligaiton to provide the
person in the custody with a health care system which meet minimal standards of
adequacy.  Part of that basic obligation is its agents have a naffirmative
duty to provide reasonable access to medical care, to prove competent,
diligent medical personnel and to ensure  that prescribed care is in fact
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
delivered.  Denial of medical care is not part of punishment which civilized
nations may impose for a crime.


Greeno v Daley, 414 F3d 645, The exhaustion of administrative remedies require-
ment has been satisfed as to complaints that state prisoner now asserting 1983
claim, had persued through highest and final level of review and that alerted
prison officials to nature of the problem and gave them opportunity to resolve
it.  This has been demonstrated by evidence of continuous talks and filing of
administrative remedies, with no response of approval or denial, merely
rejections over and over, with no  regards to assisting the inmate or
following their own written policies.
     Also, the employees lack of training and carelessness were relevant
towards establishing deliberat indifference.  Their own proof of "failure
to act", is evidence enought to prove violations.
     The general law regarding medical treatment is extablished by fact that
officers (staff) cannot intentionally deny or delay access to medical care.
(Staff is deliberately indifferent to needs and risk, therefore actions are
not protected by "qualified immunity".)  Once again, thjis deliberate indiffer-
ence to a prisoners serious illness or injury violates the 8th amendment.

May 2, 2011

USCA Constitutiona lAmendment 8, right to proper medical care for serious medical needs, serious medical need is present when the failure to treat a prisoners conditon could result in further significant injury or the unneccesary and wanton infliction of pain.  This violation is evidenced by the officials knowing of and desregarding or excessive risk of the inmates health & safety; the official must both be aware of the facts from which the inference could be drawn; that a substantial risk of serious harm exists and must also, draw the inference.   The inference is here and it is more than mere negligence.


Civil Rights Act,  provides right of action for violation of federal rights.

Factors that guide the analysis for medical care include: but are not limited to:

1.  Whether a reasonable doctor or patient would perceive the medical need in question.
2.  Whether the medical condition significantely affects daily activities, and;
3.  The existence of chronic and substantial pain.
Brock v. Wright, 315 F3d 158, 162

Also, the courts have held that  when there is substantial question to warrant release, consideration must be given.

*12*

Teh mental aspect, per the 8th amendment, is that is that need is no less serious than the physical need.  Yet, the prisoner did get to continue the prescribed medication upon arrival, this was not fulfilled until three months after arrival and one of those medications was discontinued, per BOP policy, wth no alternative, period.  "Severe" mental illness is one that has caused significant disruption in an inmates everyday life and which prevents his functioning in the general population without disturbing or endangering others or himself. Tillery v Owens, 719 F. Supp. 1256, 1286, 907 F2d 418, 1990).

For this inmate, Social Security Disability has recognized the disorder of "severe depression, which is symptomatic of severe, chronic Lyme Disease". That makes the psychological issues relevant to the physical issues, which are not being addressed.  Deficiencies in mental health care have been found to violate the Eighth Amendment.  This facility fails to provide an adequate number of qualified mental health staff.  Once psychologist per 1200 inmates is inadequate.

Examples of defeciencies in mental health care that have been found to violate the eighth amendment are lack of "adequate mental health screening on intake, failure to follow up on prisoners with known or suspected mental health disorders, failure to provide adequate numbers of qualified mental health staff, and  the housing of mentally ill prisoners in segregation or supermax units.

In this case, the intake screening was not extensive, not enough to prepare an adequate assessment, nor was the outside physician consulted.  Many of my issues are related to my illness and the adjustments I have had to make to simply live.  This criminal case simply added to thos e issues, which I was not permitted to discuss, even once I  began group counseling.  "No legal issues are permitted to be discussed".  Once again, the amount of inmates at this facility  is simply beyond safe.  There are now over 1200 women, to one counselor.  Seh cannot possibly help all of us.  The housing is another issue that has caused myself undue stress.  There are 150 women in my unit, 2 to a room, and 24 without rooms, jammed together due to lack of space, yet this

13

is rationalized by most being in some type of disciplinary trouble.  This is unsafe and possibly illegal, according to our very own accredation evaluation that happens periodically.  To further this problem, is the noise levels cannot be safe four our hearing.  I have found that my ears never stop ringing, even with ear plugs.  We are forced to wear headphones for TV watching and for any music.  Years of this unsafe practice has definately effected my hearing, as my disease, also has had an effect, along with my chosen profession, of course.

As for environmental health and safety issues, prisoners are constitutionally entitled to environmental conditions that do not pose serious risks to health and safety.  The conditions that are effecting inmates, myself and my husband, included are inadequate ventilation.  This is clearly shown by the amount of mold that is continuously a factor in the shower rooms.  This is routinely covered up by painting the ceilings, yet it continues to flourish within the vents and on the walls.  I actually had a job within the showers and I had to wear a paper mask to try and limit the amount of toxins I would breath, as the cleaners were a problem, as well.

Many inmates have contracted HPlori from the drinking water.  I have not been tested yet, but will upon release.  There are constant toxic fumes surrounding us by cleaners that are supposed to be, now, "green" products, yet painting and cleaners are constantly used in every building.  Pesticides are sprayed randomlly.  There is rumor of "asbestos" in many areas onthis compound, yet every time it is brought up, it is not here or the place is covered up and painted over.

The above mentioned issues are simply confirmation that there are more factors to consider in this instance as all of the daily exposures cause this illness to flare and progress.

As prisoners are protected by 504 of the Rehabilitation Act of 1973, 29 USC 794(a), and by Title II of the  Americans wit hDisabilities Act, 42 USC 12131, that prisoners can seek damages uner Title II if the conditions they are challenging would also violate the constitution.

*14*

According to 18 , USC 3582(c)1, Upon the motion of the Director of the
Bureau of Prisons, court may reduce the term of imprisonment if it finds
extraordinary and compelling reasons that warrant a reduction. (The bureau
has chosen to limit this avenue to severe medical problems).

BOP policy states that the Bureau of Prisons has considerable discretion
in selecting a facility for service of a time of imprisonment.  This authority
may be used to place a prisoner on home confinement.

"Alternate sentence" does not reduce the amount of time to be served, it
only alters the conditions of confinement.  This can be achieved in any number
of ways such as:  probation, home detention, home confinemement, halfway house,
and prison, as well.

The term "suffered enough" means that the purpose of sentence is to
provide just punishment.  In this case, the "just punishment" has been above
and beyond any means of reasonableness, as the crime that was alleged was
simply based upon purchases of medication used for treatment of a serious
illness, yet was not addressed  by an considerable amount of testimony by
attorneys or witnesses, let alone physicians who are experts in the field
of Lyme Disease.

Therefore, deliberate indifference to serious medical needs violates the
eighth amendment, as per Estelle v Gamble, 50 LEd. 2d 251-268 .

Other factors that should guide the analysis include, but are not limited
to, 1.  whether a reasonable doctor or patient would perceive the medical need
in question as important and worthy of comment or treatment; 2.  whether the
medical condition significantly affects daily activities, and 3.   the
existence of chronic and substantial pain.  Brock v Wright, 315 F3d 158, 162 .

The 8th amendment violation of the depravation of a basic human need is
such as food, clothing, shelter, exercise, MEDICAL CARE, and reasonable safety.
This same 8th amendment protects against conditions that pose any unreasonable
risk of future harm as well as those that are currently causing harm.
Helling v McKinney, 509 U.S. 25, 31-32, (1993)

15

Yet, according to the USCS 12101, page 97 forward, the American with Disabilities Act of 1990, congress has found that failures to make modifications to existing practices, exclusionary qualifications, standards and criteria, segregation and relegation to lesser services, benefits, etc.

The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue these opportunities. This costs the United States billions of dollars in unneccessary expenses.

According to Amendments Act of 2008, congress recommended that physical and mental disabilities, in no way, diminishes a persons right to fully participate in ALL aspects of society. People are frequently precluded because of prejudice, antiquated attitudes or the failure to remove sociatel and institutional barriers.

Congress expected the definition of disability under ADA would be interpreted consistantly, yet that expectation has not been filled.

Congressional intent is that "substantial limits" are significantly restricted.

According to USSG, (United States Sentencing Guidelines) 5D1.3 Home Detention may be imposed as a condition for supervised release but only as a substitute for imprisonment. (See 5F1.2, home detention)

According to U.S. v Moncrief, 289 FSupp 2d 1311, the court held that Montcrief moved for release or bond pending appeal and that substantial question has been raised, warranting release. Reform Act requirement for showing of "exceptional reasons" for releases.

Exceptional Reasons for release under Rule 3143, is that the defendant has extensive medical issues that have been ignored and gone untreated since federal incarceration. (See 18 USCA 1345 (c)

16

May 2, 2011

According to the Second Chance Act, a prisoner may spend a portion
of the final months of the term, not to exceed 12 months under conditions
that will afford that the prisoner, has a reasonable opportunity
to adjust to and prepare for the reentry of the prisoner into
the community. Such conditions may include a community correctional
facility.

Also, Home confinement authority, may be used to place a prisoner in
home confincement for the shorter of ten percent of the term of
imprisonment of that prisoner or 6 months.

In this case, the inmate is now within that 18 month period of available
transition. That is 12 months to a halfway house and six months to
home confinement/home detention. (As goodtime date is June 2012, which
made the inmate eligible in December 2010. This was discussed with
Unit Manager, for which no request was made to the Bureau of Prisons
Director or CCM.) Her recommendation was Jan 28, 2012, 4 1/2 months.

In the Bureau of Prisons Program Statement, 7310.04, states, the BOP
is not restricted by 18 USCS 3624 c and may in place inmate in a
community confinement center for more than six months by showing
extraordinary justification. Three factors to be considered are
    1.  nature and circumstances of offense
    2.  prisoners history and charectoristics
    3.  statements by sentencing court (which are being appealed)

This request is for extraordinary circumstances, as to allow the
prisoner to begin medical treatments that have been denied since
2009, after incarceration by the BOP. This time is needed to allow
for reentry into society, as the treatment period will take an
extensive amount of time to get into the body and begin working.
This will, also, allow the inmate time to see own physicians,
restart social security disability, seek part-time work, if
possible, and seek other specialists. Also, the treatment
regimen is extremely expensive and time is needed to gather those
funds. (This is relevant for inmate and the husband as he will
need the same treatments, time and money.)

The above may be imposed, as well as, quite simply, the dirctor
of the Bureau of Prisons, may reduce the term of imprisonment and
may even impose a term of probation or supervised release with or
without conditions, that does not exceed the unserved protion of the
original term of imprisonment, as stated in 18 USCS 3553a.
This is:  1.  extraordinary and compelling reasons that warrant such a
                reduction or
         2.  the defendatn is at least 70 years old which is NA here.

17

BOP policy states that if an inmate cannot be treated for any reason of any illness, alternate incarceration may be granted This is that case, this is my husbands case and I am requesting that the courts determine that we both, have been denied this and it is unconstitional.

This illness and the conditions that hinder and disable a person were not addressed by previous attorneys prior to incarceration, therefore, this issue was not thoroughly discussed, nor was any medical experts brought in to testify or explain the detrimental effects that this type of incarceration would bring.

The former judge did determine that my husband could be treated at a hospital near him, yet that has never happened, as BOP policy does not permit it.

The above issues are facts and cannot be disputed as there is no BOP policy, no treatment plan, no mdications permitted,by this bureau nor by any outside sources, as nothing can be sent in by outside physicians.  This all leads to the very fact that my husband and I, and quite possibly any other inmate with this disabling, terminal illness, that is in a progressive state, cannot be detained and must be permitted to receive alternate incarceration to obtain medical  care and medications.

*18*

May 2, 2011

Recommendation:

~~For the reasons set forth, the undersigned recommends that the~~
~~Court enter an order GRANTING~~ the petitioners motion for
~~compelling~~ the Bureau of Prisons to issue an approval or
denial, immediately, as this is medically necessary, or
as the court sees to issue a summary judgement.  The issues
are  for compassionate release, the reinstatement of the
medication, Depo Provera, and the courts to permit further
civil proceedings , along with the issuance of an appealate
attorney for advice and assistance with further issues,
pertaining to civil issues and medical issues.


_____ 5-2-11

Petitioner,

May 2, 2011

Clerk

Teresa L. Deppner, District Clerk
300 Virginia St., East, Room 2400 (Zip: 25301)
P.O. Box 2546
Charleston, WV 25339-2546
(304) 347-3000

Ms. Deppner:

The following packet contains motions to be reviewed by a Federal District Court Judge. I am currently incarcerated in tthe Southern District, Alderson FPC, Alderson, West Virginia.

I have persued all avenues, according to the Bureau of Prisons instructions, policies and guidelines, yet the issues are not resolved. Since all measures have been exhausted, by administrative remedy pe rthe Bureau of Prisons, I am now seeking the courts to remedy the issues.

Please review and process the folliwng mootions to the proper court, in this district, as there appears to be numerous and I am unsure of the area to address.

This matter, may also, involve the need of an appointed civil attorney, as I have been informed that while incarcersted, that is a possibility. Even though, I have begun pro se, I would like to seek future advise. Please respond if this is, in fact, true. (I do have a retained criminal attorney for this incarceration who has filed, as well as myself, numerous mottions within the Northern District Court, for which we are awaiting responses, The attorney has been retained by a family member, not me)

Thank you for your time and I look forward to your response. Also, please note that the attached check is for the filing fee of $350.00, as told to me by my husband, who recently filed in the Northern District and was told that was the fee. Please inform me if this is not satisfactory. Thank You.

Sincerely,


Jodi D. Dodson
06199-087 B3
Alderson Federal Prison Camp
Box A
Alderson, WV 24910

This request is based upon the following packet of evidence, which will enable the courts to make an informed decision. This decision will be determined by the facts that this inmate has followed all protocol, all instructions, all requests, yet, not relief has been forthcoming by staff of the burea of prisons.

This issue is a medical issue that, according to BOP instruction, will be expedited. This has not been the case, as this original request for compassionate release was filed in October of 2009, and has still not been approved nor denied, as the Bureau of Prisons Staff has hindered any and all efforts by the inmate, to reach an appropriate and legal end to this issue. This matter has progressed to the point that no other efforts may be taken on the part of the inmate but by the courts. The lack of compassion and care are grounds for this court to reach its own determination for the Bureau of Prisons, as they refuse to follow their own rules.

This illness has been determined by outside physicians to be progressive and terminal. There is no cure yet symptoms can be managed and lifespan can be lengthened by proper treatment. The BOP and its staff have no policy for treatment of this illness, no treatment plan, and refuse to acknowledge nor make exceptions or new policies to adhere to for this inmate or any other. This fact is clear as the inmates husband is incarcerated, as well, and has received no treatment nor care of any type for the same illness.

*19*

The following packet contains evidence of the inmates efforts to obtain compassioante release/alternate incarceration of home confinement, due to medical conditions.

* Exhibit A contains the table of contents, which is the exhibit number and title of each section.

* Each section has been seperated and identified for the courts convenience and easier identification.

* Please note the remarks on the rejection pages, and the effort by the inmate to accomodate the BOP, with no results.

* Please review the instructions per compassioante release and administrative remedy.

* Please review the Alderson Health Services lack of records and the included issue of removal and denial of prior medication, Depo Provera, that has not been determined by administrative remedy, as well.  (That response was due by the central office on February 3, 2011, after extensions, and has still not been approved or denied).

Compassionate Release Summary:

On 10/13/10, the inmate filed a request for compassioante release, 3582, to
Warden Batts, at Alderson FPC, Alderson, West Virginia.
Per the institution, this request consisted of an introduction,
information by the inmate, contacts, future plans and relevant
issues.
Exhibits 1-8 and 18

Also, per the instructions for compassionate release, documentation
by outside attending physician, literature, was to be included.
Exhibit 9 thru 9-6-F

The inamte did obtain Aldersons Medical Records  and included those
as exhibits, as well, which shows indifference and lack of treatment.
Exhibits 10-1 thru 10-13

Included, was the entire Depo Provera medication documentation and
administrative remedy procedures followed in order for the
medication to be reinstated.  (Couert issue, along with comp. release)
Exhibits 11-4 thru 11-6 and 4-1 thru 8-1

10/25/10, Warden Batts responded with a denial that was insufficient
as stated in the BP9 filed.
Exhibits D-12 thru 12-4,19, and 20, instructions

11/3/10   Alderson rejects BP9

11/16/11, Inmate filed administrative remedy BP10 for compassionate
release due to the disagreement to Warden Batts
initial response and the rejection
Exhibits 13-1 thru 13-2

12/13/10, Inmate receives regional office rejeciton notice, for
the same issues and nees institutional response by
Alderson before they can respond
Exhibit 13-3 thru 13-5

12/29/10, Inmate speaks with staff, who requested that the inmate
resubmits another BP9 on the same issues yet without
any exhibits or attachments, which is not the institutions
nor the BOP instructions for filing remedies or
compassionate release requests.
Exhibit 14-1 thru 14.3

1/19/11, Alderson, Warden Batts, response, denying administrative
remedy, stating to submit an appeal to the regional
office.
Exhibit 14-4

12/29/10 Per staff inmate submits copout to HSU requesting new
1/7/11   Treatments and meeting takes place with the director and
the past director, Nurse Osbourne,  relating to illness and
medication problems, which leads to the admission that the
BOP does not have a treatment or policy for my illness, merely
a CDC recommendation for initial infection.  This leads to
regional doctor visit, as well.

2

| 1/25/11 | |
|---|---|
| ~~1/31/11,~~ | ~~Inmate files BP10 to regional office stating previous~~ |
| | ~~issues, with attacheed mailroom notice for postage~~ |
| | ~~due, (Aldersons fault), and the regional response of~~ |
| | ~~rejection, again.~~ |
| | ~~Exhibt 15-1 thru 15-3~~ |
| ~~3/14/11,~~ | ~~Inmate files BP11, to district office based on rejections and addresses~~ |
| | each remark. |
| 4/1/11 | Distrct office responds with another rejection stating needs institutional |
| | response first. |
| 4/2/11 | Inmate begins preperation for district court |
| 5/24/11 | Inmate mails case to federal district court. |

O

## TABLE OF CONTENTS
### for
### COMPASSIONATE RELEASE  REQUEST

*A*

| EXHIBIT NUMBER | # of PAGES | TITLE |
|---|---|---|
| 1 | 2 | Introduction |
| 2 | 2 | Summary of Request |
| 3 | 1 | Extraordinary circumstances |
| 4 | 1 | Contact List |
| 5 | 2 | Inmate Statement to Staff |
| 6 | 1 | Future Plans/Medical and Personal |
| 7 | 3 | Related Legal Issues |
| 8 | 3 | Issues Effecting Disease Due to Incarceration |
| | | ******************************** |
| 9 | 1 | Documentations for Attending Physician Intro. |
| 9-1 | 2 | Letter |
| 9-2 | 1 | Symptom List |
| 9-3 | 1 | Brief onImmune response/Other informations |
| 9-4 | 1 | Testing for Epstein Barr Virus Results (Goes hand in hand with Lyme Disease) |
| 9-5 | 1 | List of Various medications, homeopathic, and over the counter remedies, used upon symptom flareups, customized to need |
| 9-6 A-F | 16 | Numerous literatures on Lyme Disease, for reference and education stating the difficulties in treating this horrific desease and the disabling symptoms, among other useful information |
| 9-6-A | 4 | Lyme Disease can mimic MCS symptoms |
| 9-6-B | 2 | What psychiatrists Should Know About Lyme |
| 9-6-C | 2 | What You need To Know About ILADS and Lyme |
| 9-6-D | 1 | Public Health Alert |
| 9-6-E | 5 | LDA/ILADS 2007 Conference Report |
| 9-6-F | 2 | Tick Talk |

*B*

| | | |
|---|---|---|
| | | Alderson HSU Medical Records Given to Inmate upon Request |
| 10-1 | 1 | Labe Report 2/25/09 |
| 10-2 | 2 | Sick Call report -cold/flu symptoms |
| 10-2-A | 1 | LabCorp Report 3/12/09 |
| 10-3 | 2 | Sick Call 3/30/09, check on med RX |
| 10-4 | 1 | Dr. Wright, clinical encounter 4/1/09 |
| 10-5 | 3 | Dr. Rehberg, chronic care 9-17-09 |
| 10-6 | 2 | Lab Report 7/23/09 |
| 10-7 | 3 | Nurse Piner, Clinical Encounter 11/1/09 |
| 10-8 | 2 | Dr. Wright, Cronic Care 1/14/10 |
| 10-9 | 4 | PA Ligenfelter, Preventive Health Pap Test, 7/13/10, was told to take to continue Depo Provera Medication, 7/13/10 |
| 10-10 | 2 | Sick Call report- ,edoeom fqiestopms 7/19/10 |
| 10-11 | 2 | Dr. Wright report 7/23/10 |
| 10-12 | 1 | Pap Test Results 7/23/10 |
| 10-13 | 1 | Lab Report 7/28/10 |

*C*

| | | |
|---|---|---|
| 11-4 thru 11-6 DP | 46 | Depo Provera Medication file, for |
| 4-1 thru 8-1 DP | | Administrative Remedy with Table of Contents |

TABLE OF CONTENTS, cont.

| EXHIBIT NUMBER | # of PAGES | TITLE |
|---|---|---|
| | | Administrative Remedy, PB9 (#1) |
| D | | Compassionate Release, Alderson |
| D12 | 1 | Warden Batts, Alderson FPC, denial |
| 12-1 | 3 | Mr. Garrett, copout to submit BP9 on behalf of counselor Ms. Johnson |
| 12-2 | 1 | Copy of BP9 (inmate has original) |
| 12-3 | 3 | Inmate response to Warden Batts, and attachment of 5 page explanation |
| 12-4 | 1 | Warden Batts response to BP9, as rejection notice per Alderson |
| E | | Administrative Remedy, BP10 (#2) Compassionate Release, Regional |
| 13-1 | 3 | Copy of BP10 (inmate has original) |
| 13-2 | 2 | Inmate explanation regarding Warden Batts rejection/denial |
| 13-3 | 1 | Regional rejection notice |
| F | | per Alderson staff, suggested that inmate resubmit BP9 to Alderson without exhibits (inmate disagrees) |
| 14-1 | 1 | Inmate response to BP10 rejections per conversation with counselor and unit manager. |
| 14-2 | 4 | |
| 14-2 | 4 | Administrative Remedy, BP9 (#2) Compassioante Release, Alderson |
| 14-3 | 2 | Copy of BOP instructions, kept by counselor Ms. Johnson, for reference |
| 14-4 | 1 | Warden Batts response to BP9 #2, (denial did not address issue of exhibits) |
| 14-3.5 | | Receipt |
| G | | Administrative Remedy, BP10 (#2) Compassionate Release, Regional |
| 15-1 | 6 | Copy of BP10 (inmate has original), plus disagreement by inmate, including exhibits for reference as four copies were returned without review) |
| 15-2 | 1 | Mailroom notice of postage due on package they weighed. (explanation on bottom of page) |
| 15-3 | 1 | Regional office rejection notice to BP10 (#2) |

TABLE OF CONTENTS, cont.
for
COMPASSIONATE RELEASE REQUEST

| EXHIBIT NUMBER | # of PAGES | TITLE |
|---|---|---|
| H 16 | 1 | ADD ON: This is a cop out to Mr. Weaver HSU director, as requested per the unit manager, Ms. Altizer, regarding new treatments per the BOP and includes his response |
| 16-1 | 1 | ADD ON: Brief synopsis of meeting called by Mr. Weaver, to include, meeting with the regional doctor and the inmate response and conclusion to the above. (12/29/10 and 1/7/11) |
| I 17 | | Administrative Remedy, BP11, Compassionate Release, District Office |
| 17-1 | 1 | Copy of the BP11 |
| 17-2 | 1 | District Office rejection notice |
| J 18 | 6 | Federal Bureau of Prisons Program Statement Compassionate Release Procedures for Implementation |
| 19 | 14 | Federal Bureau of Prisons Program Statement Administrative Remedy Program |
| 20 | 7 | Alderson Federal Prison Camp Institutional Supplement for Administrative Remedy Prodedures for Inmates |
| 21 | 2 | Alderson Federal Prison Camp , Institutional Supplement Relegious Beliefs |
| 22 | 5 | Alderson Federal Prison Camp, Institutional Supplement, Patient Care |
| 23 | 3 | Federal Bureau of Prisons Program Statement Psychiatric Services |
| 24 | 1 | Federal Bureau of Prisons, Program Statement Pharmacy Services |
| 25 | 1 | Federal Bureau of Prisons, Medical Designations referral services for federal inmates |

TABLE OF CONTENTS, cont.
for
COMPASSIONATE
RELEASE

| EXHIBIT NUMBER | # of PAGES | TITLE |
|---|---|---|
| K  26 | 25 | References |
| 1 | 1 | 570.20, Community confinement 570.21 |
| 2 | b | Westlaw, BOP RRC, Community Confinement, Second Chance |
| 3 | 1 | BOP Memo, Second Chance, Halfway house |
| 4 | 6 | RRC Placement |
| 5 | 1 | 3582, Imposition of Sentenc |
| 6 | 1 | 3621, Imprisonment of convicted person |
| 7 | 8 | 3624, Release of a Person |
| L  27 | 2 | BOP, Compelling Circumstances for Compassionate Release, by FAMMGRAM |
| M  28 | 4 | Furloughs, 570.33 |
|  | 4 | Federal Register, Revistion , 2/10/11 Furloughs 570. |
|  | 4 | Federal Register, , Pre-release, Community Confinement 570. |